**SO ORDERED.**

**SIGNED this 15 day of December, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

LINDSEY HARRIS,                              CASE NO. 11-00133-8-JRL
                                             CHAPTER 13
    DEBTOR.

_____

### ORDER

This matter came before the court on the debtor's objection to the claim filed by the North Carolina State Education Assistance Authority ("NCSEAA"). A two-day hearing was held on August 10, 2011 and November 10, 2011 in Raleigh, North Carolina.

### BACKGROUND

The debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on January 6, 2011. On May 13, 2011, NCSEAA filed a proof of claim in the amount of $75,837.39 for unsecured student loan debt. The debtor filed an objection to claim on May 19, 2011. At the hearings, thirteen loan applications and promissory notes were entered into evidence. The debtor does not dispute that, while a high school senior living at home, she signed a loan application and promissory note for an Extra Education Loan in favor of College Foundation, Inc. ("College Foundation") on April 13, 2005 and a Federal Stafford Loan Master Promissory Note through the Federal Family Education Loan Program on April 14, 2005. The

debtor's mother ("mother") also signed both promissory notes as a guarantor. As of the hearing date, the debtor owed a total of $15,641.88 on these two notes.

It is also undisputed that the mother signed the debtor's name to the remaining eleven loan applications and promissory notes ("notes"). At the hearing, the mother testified that between February 2006 and March 2009, she signed the debtor's name as borrower and her own name as guarantor on at least eleven applications for student loans. The mother stated that the debtor gave her permission to sign the debtor's name to the promissory notes, and thus she was authorized to bind the debtor on the notes. In addition to signing the debtor's name to the promissory notes, the mother also signed the debtor's name to a release form from the debtor's university that would allow the mother to access the debtor's financial information from the school. The debtor contends that the mother signed these notes without the debtor's authorization, and thus part of NCSEAA's claim is invalid.

At the hearing, a representative from the College Foundation testified about its student loan application process. At College Foundation, student loan applications are not required to be notarized, and College Foundation does not verify signatures on student loan applications. After the loan application is complete, College Foundation contacts the borrower's university to have the university certify the maximum amount the student will need and receive for tuition and living expenses. Borrowers must reapply each year for these student loans. On several of the applications in this case the mother requested loan amounts well above the cost of tuition and living expenses associated with attending a public university.[1] These same applications were often made at erratic times that did not correspond with when tuition was due. The mother

---

[1] The mother requested $20,000.00 in July 2008 and then $50,000.00 in August 2008.

testified that the large amounts requested were either accidental or done because she thought the proceeds would be used throughout the duration of the debtor's education. The College Foundation representative testified that parents may also apply for loans to benefit their student. Only the parents, and not the student, are liable on the parental loans. Unlike student loans, repayment begins as soon as the parental loans are disbursed. The debtor stated that her parents told her they would be financing her education with parental, not student, loans.

A representative from the debtor's university testified as to the university's procedure on handling student loan money. After the application and certification process is complete, the university receives the entire amount of the student's loan funds. The university deducts the student's tuition obligation from the loan funds and then refunds the remainder of the funds to the student. The debtor's university gives students the option of having their refund directly deposited into their bank account. This method was purportedly selected by the debtor. The mother testified that she set up a joint bank account for her and the debtor. This was the same account into which the debtor's university would deposit the debtor's refund. The debtor stated that she was never asked by her university to select a refund option, and the debtor never gave her mother permission to open a joint bank account in her name.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. All of these matters are core proceedings within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## DISCUSSION

The debtor contends that part of NCSEAA's claim is invalid. Specifically, the claim is not enforceable against the debtor because the mother signed the debtor's name without the debtor's authorization. Section 502 of the Bankruptcy Code states that if an objection to claim is made the court shall determine the amount of such claim and shall allow the claim, except to the extent that the claim was unenforceable upon the date of the filed petition. 11 U.S.C. §502(b). "Claims that are unenforceable against the debtor or against property of the debtor . . . are simply not allowable for purposes of a right to share in a distribution of the debtor's assets." In re Easthaven Marina Group, LLC, No. 08-05453-8-JRL (Bankr. E.D.N.C. May 7, 2009) (Leonard, J) (quoting 4 Collier on Bankruptcy (15th ed. rev.) ¶ 502.03[2][b][iii]).

Pursuant to § 25-3-401 of the North Carolina General Statutes, "A person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under G.S. 25-3-402." N.C. Gen. Stat. § 25-3-401. "An agent is one who, with another's authority, undertakes the transaction of some business or the management of some affairs on behalf of such other, and to render an account of it." Phelps-Dickson Builders, LLC v. Amerimann Partners, 172 N.C.App. 427, 435, 617 S.E.2d 664, 669 (2005). "There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." Vaughn v. Dep't of Human Resources, 37 N.C.App. 86, 91, 245 S.E.2d 892, 895 (1978). "Consent of both principal and agent is necessary to create an agency. The principal must intend that the agent shall act for him, the agent must intend to accept the authority and act on it, and the intention of

parties must find expression either in [words] or conduct between them." Ellison v. Hunsinger, 237 N.C. 619, 628, 75 S.E.2d 884, 891 (1953).

Here, it is undisputed that the mother signed the debtor's name to eleven promissory notes. Thus the question becomes whether the mother had authority to sign the promissory notes on the debtor's behalf. The mother testified that the debtor asked her to sign the debtor's name to the promissory notes. The mother also testified that she had several emails to corroborate this fact. However, the sparse emails produced during the hearings were ambiguous and do not establish that the mother had permission to sign loan documents for the debtor.

The debtor testified in direct contradiction of her mother's statements by stating that she never gave her mother permission to sign the promissory notes on her behalf. In addition, the time and amounts of several of the mother's requests were erratic. The debtor presented evidence that she held several part-time jobs throughout college to pay part of her living expenses. Thus it is clear that the amounts disbursed to the debtor's joint account were well above what the debtor actually needed to pay living expenses. Also, the mother completely controlled the debtor's bank account which held the student loan money. There was evidence presented showing the mother used substantial sums of the money for her own benefit, unrelated to the debtor's education, that was never paid back into the debtor's bank account. The court finds that this fact creates the inference that the mother was requesting student loan money in order to use it for another purpose. Finally, the debtor's boyfriend's father testified that he traveled with the debtor to College Foundation to see why College Foundation was asserting the debtor's liability on the notes. The court credits his testimony as to the debtor's complete incredulity that this had happened to her.

NCSEAA failed to produce sufficient evidence that demonstrates the debtor and the mother had an agency relationship to hold the debtor liable on eleven promissory notes. An agency relationship does not have to be in writing to be valid. However, the creation of the agency relationship must be clear and unequivocal which is not the case here. Therefore, NCSEAA's claim in full is unenforceable against the debtor.

Based on the foregoing, debtor's objection is **ALLOWED IN PART** and NCSEAA's claim is allowed in the amount of $15,641.88. The remainder of NCSEAA's claim is **OVERRULED**.

**END OF DOCUMENT**